## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL B. WOODS**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO.  12-1844**

**N. BURL CAIN, WARDEN**                          **SECTION "E"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Michael Woods, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]   On July 11, 2007, Woods was charged by bill of information in Jefferson Parish with simple burglary of an inhabited dwelling; and possession of Hydrocodone and Alprazolam, both controlled dangerous substances.[3]   The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> The defendant was charged in connection with the July 24, 2007 burglary of a residence located at 513 Montgomery Avenue in Metairie.
> On that day, Juan Santos, who lives down the street at 520 Montgomery Avenue, was in his front yard with his thirteen year old son, Juan Thompson, who was mowing the lawn. Juan Santos's home is situated at the corner of Montgomery and Hodgson Avenues.  Juan Thompson testified that while in the front yard he saw a man, later identified as the defendant, walking down Montgomery Avenue in a direction away from Hodgson Avenue. Thompson stated that he saw the man walk to the side of 513 Montgomery Avenue through the driveway and next heard a loud banging noise. Thompson did not see the defendant enter the house, but he testified that he was "pretty sure" that the defendant had broken into 513 Montgomery Avenue. Santos was familiar with the owner of the residence, whom he identified as "Roger."
> Approximately fifteen minutes after Thompson and Santos lost sight of the defendant, Roger Falcon, the owner of 513 Montgomery Avenue, returned from a fishing trip with the defendant's brother.  Falcon testified that when he arrived home, he found that his door had been smashed and was in pieces.  Falcon stated that he entered the residence and saw the defendant (a man he had known for approximately thirty years) standing in his living room. Falcon screamed at the defendant and asked what he was doing in his living room, to which the defendant

---

[2]Rec. Doc. No. 3.

[3]Bill of Information, St. Rec. Vol. 2 of 4, p. 7.

responded that he was looking for something to steal. In response, Falcon testified that he walked outside and called the police from his cellular phone.

Tina Lafleur was standing outside her home on Montgomery Avenue on that day when Falcon returned home.  She testified that she saw Falcon pull into his driveway and walk to the side of his house. Lafleur recalled that Falcon yelled, "What the hell" as he approached the side door to his house. Lafleur then heard Falcon scream, "what the f--- are you doing in my house" and observed Falcon walk outside and use his cell phone.

After Falcon called the police, the defendant left Falcon's home and walked in the direction of Hodgson Avenue. Lafleur testified that she tried to tell the defendant not to leave because the police had been called, but he ignored her request and continued toward Hodgson. Lafleur recalled that she saw the defendant take a right at the corner and head down Hodgson in the opposite direction of Montgomery. Both Juan Thompson and Juan Santos testified that the defendant walked approximately three or four blocks down Hodgson and entered a white sport utility vehicle.

Eric Larotunda testified that on the date of the burglary, the defendant asked him for a ride to the local Rite–Aid.  At the time, Larotunda owned a white Ford Explorer sport utility vehicle and lived on Oriole Street, on the corner of Montgomery Avenue and Oriole Street and four blocks from the corner of Montgomery and Hodgson Avenues. Larotunda agreed to give the defendant a ride because the two were next door neighbors. The defendant bought some cigarettes at Rite–Aid and Larotunda began to drive him home.  However, before the defendant and Larotunda returned to Larotunda's home, the Jefferson Parish Sheriff's Office stopped the Explorer.

Jefferson Parish Sheriff's Deputy Edward Ducos responded to the burglary.  Ducos learned from witnesses that the perpetrator had entered a white sport utility vehicle and immediately put the information out on the radio, which led to the stop of Larotunda's Explorer approximately ten minutes later. Ducos asked Falcon if anything had been stolen from the house. Falcon responded that he was not yet sure. Ducos also asked Falcon if he was missing any money from the house.  Falcon told Ducos that the only money that he kept in the house were two dollar bills and quarters that had been given to him by his mother in 1976.

Jefferson Parish Sheriff's Deputy Abraham Andino testified that he stopped a white Ford Explorer while responding to the burglary. Approximately five to ten seconds after Andino had stopped the Explorer, Sergeant Dave Darwin arrived on the scene. Darwin testified that he saw the defendant bend down, throw something under the Explorer, and try to go into his pockets again.  At that point, Darwin tried to grab the defendant and spin him around, but both men tripped and fell against the Explorer. The defendant continued to resist, even after Andino assisted Darwin in placing the defendant on the ground. Eventually, Andino had

to deploy his taser multiple times to subdue the defendant.  After subduing the defendant, Andino saw assorted property and a "bunch of pills" in the area where the defendant had struggled with himself and Darwin. Andino testified that he recovered both white and light green oblong pills from the scene of the struggle. Andino also recovered some loose change and three two dollar bills from the defendant's right front pocket.

After Officer Ducos learned that the defendant had been apprehended, he took Falcon to the scene. Falcon positively identified the defendant as the man that had been in his house when he had arrived home. Falcon was also able to identify both the two dollar bills and loose change as money that his mother had given him in 1976 to mark the bicentennial.

At trial, Daniel Waguespack testified on behalf of the state. Waguespack testified that the testing performed on fourteen white oblong tablets recovered from the defendant indicated that they contained alprazolam, a controlled dangerous substance. Waguespack further testified that the testing performed on the five recovered light green tablets indicated that they contained hydrocodone, a controlled dangerous substance.

State v. Woods, 4 So.3d 248 (La. App. 5th Cir. 2009); State Record Volume 4 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 2008-KA-0718, February 10, 2009.

Before trial, Woods's appointed counsel filed a motion to sever the simple burglary charge from the drug charges and a motion to suppress the drug evidence obtained during Woods's arrest.  On April 16, 2008, the trial court denied both motions.[4] On that same date, trial commenced and a jury found Woods guilty of attempted simple burglary of an inhabited dwelling and guilty as charged on the drug possession charges.[5]

On April 25, 2008, the trial court sentenced Woods to six (6) years at hard labor for his attempted simple burglary conviction and five-year (5) terms of imprisonment for

---

[4]St. Rec. Vol. 2 of 4, pp. 68 and 78.

[5]St. Rec. Vol. 1 of 4, 04/16/2008 Court Minutes and Jury Verdicts.

each of his drug convictions, to run consecutively.[6]  On that same date, the State filed a multiple offender bill of information against Woods.[7]  On August 18, 2008, the trial court found that Woods was a fourth felony offender.  The court vacated its original sentence and re-sentenced Woods to life imprisonment without benefit of probation or suspension of sentence with credit for time served.[8]

On direct appeal, Woods's appointed counsel asserted a single assignment of error, arguing that the trial court erred in denying Woods's motion to sever.[9]  On February 10, 2009, the Louisiana Fifth Circuit affirmed Woods's conviction, finding no merit to Woods's argument.[10]   On January 29, 2010, the Louisiana Supreme Court denied Woods's writ application without opinion.[11]

Meanwhile, on March 24, 2009, while his writ application was pending before the Louisiana Supreme Court, Woods filed a post-conviction application in the state trial court claiming that he was denied his constitutional right to appeal his habitual offender

---

[6]Id., 04/25/2008 Court Minutes.

[7]St. Rec. Vol. 1 of 4.

[8]Id., 08/18/2008 Court Minutes.

[9]St. Rec. Vol. 2 of 4, tab 3, Appeal Brief at p. 5, 2008-KA-0718, 9/22/08.

[10]State v. Woods, 4 So.3d 248 (La. App. 5th Cir. 2/10/09), No. 2008-KA-0718; St. Rec. Vol. 4 of 4.

[11]State ex rel. Woods v. State, 25 So.3d 831 (La. 2010); No. 2009-KH-0837; St. Rec. Vol. 1 of 4.

adjudication.[12]  On April 15, 2009, the trial court found that due to an error by the clerk of court's appeals department, Woods's motion to appeal his habitual offender adjudication "was never processed."  The court ordered that the appeal "will now be processed, and the return date will be extended 30 days after the signing of this order."[13] On March 9, 2010, the Louisiana Fifth Circuit affirmed Woods's habitual offender adjudication and sentence.[14]  On October 29, 2010, the Louisiana Supreme Court denied Woods's writ application without opinion.[15]

On November 13, 2010, Woods filed a post-conviction application in the trial court claiming: (1) He was "brought to trial on a criminal charge of burglary, that was ruled upon to have no probable cause."  (2) He was denied effective assistance of counsel because his counsel (a) failed properly to litigate a Fourth Amendment violation, (b) portrayed him as a drug dealer, and (c) failed to "make a second motion to sever charges."  On February 16, 2011, the trial court denied Woods's post-conviction

---

[12]St. Rec. Vol. 1 of 4.

[13]Id.

[14]State v. Woods, 38 So.3d 391 (La. App. 5th Cir. 03/09/10); No. 2009-KA-0399, St. Rec. Vol. 1 of 4.

[15]State v. Woods, 48 So.3d 1096 (La. 2010); No. 2010-KO-0784, St. Rec. Vol. 4 of 4.  Woods's convictions, habitual offender adjudication and life sentence became final 90 days later, on January 27, 2011, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

application.[16]  On May 18, 2011, the Louisiana Fifth Circuit likewise found that Woods was not entitled to post-conviction relief.[17]  On March 23, 2012, the Louisiana Supreme Court denied Woods's writ application without opinion.[18]

## II.    FEDERAL HABEAS PETITION

On August 9, 2012, the clerk of this court filed Woods's petition for federal habeas corpus relief in which he asserts two (2) grounds for relief: (1) He received ineffective assistance of counsel because his counsel (a) portrayed him as a drug dealer,  (b) failed to litigate a Fourth Amendment violation, and (c) failed to reurge his motion to sever. (2) His constitutional rights were violated when he was tried on a charge for which there was no probable cause.

The State filed a response in opposition to Woods's petition, conceding that the petition was timely filed and not contesting that Woods has exhausted his state court remedies, but asserting that all of Woods's claims are without merit.[19]

---

[16]St. Rec. Vol. 1 of 4.

[17]Woods v. Cain, No. 2011-KH-0398 (La. App. 5th Cir. 05/18/11); St. Rec. Vol. 1 of 4.

[18]State ex rel. Woods v. State, 84 So.3d 571 (La. 2012); No. 2011-KH-1382, St. Rec. Vol. 1 of 1.

[19]Rec. Doc. No. 14.

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Woods's petition, which, for reasons discussed below, is deemed filed in this federal court on July 13, 2012.[21]

The threshold questions in habeas review under the amended statute are whether the petition was timely filed within the AEDPA's one-year statute of limitations and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in

---

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Woods's petition was filed by the clerk of this court on August 9, 2012, when Woods paid his filing fee.  Woods dated the signature on his petition on July 13, 2012.  This is the earliest date on which he could have delivered the petition to prison officials for mailing. The fact that the petition was not actually filed until later does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even though fee requirement has not been satisfied at the time of mailing) (citing Spotville, 149 F.3d at 374).

"procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c).

The State concedes[22] and I find that Woods's petition is timely filed. The State does not contest and I find that Woods has exhausted his state court remedies.  For the following reasons, I find that Woods's claims are without merit and recommend dismissal for that reason.

IV.   <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)). Determinations of questions of fact by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert</u>. <u>denied</u>, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).  A state

---

[22]Rec. Doc. No. 14, pp. 3-4.

court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280–81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Penry, 532 U.S. at 792–93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24–25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 1)

Woods asserts that he received ineffective assistance of counsel on three separate grounds. He argues that during cross-examination of the victim, his counsel elicited testimony portraying Woods "as a drug dealer who wanted [the victim's] money."[23] Woods also asserts that his counsel was ineffective in failing to litigate his Fourth Amendment claim and in failing to reurge his motion to sever.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the

---

[23]Rec. Doc. No. 3, p. 16.

Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively

12

reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir.

1999) (citing Strickland, 466 U.S. at 689–90).  In assessing counsel's performance, a

federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S.

at 689; Neal v. Puckett, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th

Cir. 2000), cert. denied, 531 U.S. 1167, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001).

On habeas review, the United States Supreme Court has recently clarified that,

under Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom."  Harrington v. Richter, _ U.S. _, 131 S.Ct. 770, 788

(2011).  The Harrington Court went on to recognize the high level of deference owed to

a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is doubly so.  The
> Strickland standard is a general one, so the range of reasonable applications
> is substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under Strickland with unreasonableness under
> § 2254(d). When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable. The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential standard.

Federal courts have consistently recognized that tactical decisions when supported

by the circumstances are objectively reasonable and do not amount to unconstitutionally

deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983–84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

A.      Cross-Examination of Victim

Woods complains that his counsel's cross-examination of the victim, Roger Falcon, was prejudicial because it portrayed Woods as a drug dealer.  Woods asserts that because he was on trial for drug offenses, his counsel's portrayal of him as a drug dealer "doom[ed]" his defense.[24]

The trial transcript of the victim's cross-examination states in pertinent part:

Q.  Did you not tell the police you were unaware of anything missing from your home?
A.  Yes, sir.
Q.  Okay.  Did you also tell the police that when you saw [Woods] leave your home, you did not see him carrying anything that belonged to you? Do you remember telling the police that?
A.  I believe so, yes, sir . . . .
Q.  Okay.  Have you and he [Woods] ever done drugs together?
MR. MORALES [prosecutor]:
      Objection, Your Honor.

--------

[24]Rec. Doc. No. 3, p. 18.

MR. FLEMING [defense counsel]:
>    I am on cross.
THE COURT:
>    How is that relevant though to this case?
MR. FLEMING:
>    How well they know each other.
THE COURT:
>    Well, I think you can ask him that.  He has admitted that he has priors
. . . .
CONTINUED BY MR. FLEMING . . . .
>  Q.  Okay.  Isn't it a fact, when you approached, when you saw him for the
first time, he was on the porch of your home to collect money you owed
him?
>  A.  That's incorrect, sir.
>  Q.  Did you not slam the door, the side door to your home, in his face?
>  A.  I did not, sir . . . .
>  Q.  Okay.  Four days earlier, had he not delivered to you, ten pounds of
marijuana?
>  A.  No, sir . . . .
>  Q.  Did you not owe him five thousand dollars for this?
>  A.  No, sir.
>  Q.  But you've been convicted of attempted burglary, and you've been
convicted of possession with intent to distribute marijuana? Yes?
>  A.  Yes, sir.[25]

Read in context, it is apparent that counsel's strategy in posing these questions

which Woods finds objectionable was twofold.  First, he was attempting to show that

Woods in fact did not take <u>anything</u> from the victim's home and that Woods was at the

victim's home in an attempt to collect money the victim owed him.  Second, he was

attempting to undermine the victim's credibility. Counsel's strategy was partially

---

[25]St. Rec. Vol. 2 of 4, pp. 117, 119-21.

successful in this regard; the jury did <u>not</u> convict Woods of simple burglary as charged in the bill of information.  The jury found Woods guilty on the lesser charge of <u>attempted</u> simple burglary.

The victim clearly denied that Woods had sold him any marijuana, thus undermining any implication from the cross-examination that Woods was a dealer. Instead, Woods's defense on the drug charges was hindered not because of any insinuation arising from counsel's cross-examination but because of the clear and overwhelming other evidence against him.  Jefferson Parish Sheriff's Deputy Dave Darwin testified that once the car in which Woods was a passenger was stopped, he saw Woods get out of the car, reach into his pockets and throw something under the car.[26] Thereafter, Woods attempted to flee but was subdued after Jefferson Parish Sheriff's Deputy Abraham Andino "deployed his taser."[27]  Deputy Andino testified that once he had Woods under control, he saw white pills and green pills on the ground and later found some of these same pills in Woods's pocket.[28]  Expert witness Daniel Waguespack

---

[26]St. Rec. Vol. 2 of 4, pp. 162-63.

[27]<u>Id</u>. at pp. 163-64.

[28]<u>Id</u>. at pp. 171-74.

testified that the white pills contained Alprazolam, a controlled dangerous substance; the green pills contained Hydrocodone, a controlled dangerous substance.[29]

Defense counsel's cross-examination of the victim was trial strategy. A "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)). In the instant matter, not only was counsel's strategy not "ill chosen," it was partially successful in that the jury returned a lesser than charged verdict of attempted simple burglary.  Moreover, given the strong evidence reflecting that Woods was in fact guilty of possessing Alprazolam and Hydrocodone, it cannot be concluded that the cross-examination Woods challenges permeated the trial with obvious unfairness.  I find he was not prejudiced by counsel's cross-examination.  The state courts' denial of Woods's claim of ineffectiveness based upon counsel's alleged deficient cross-examination does not represent an unreasonable application of Supreme Court precedent to the facts of this case.

---

[29]Id. at p. 82.

17

B.    Fourth Amendment Violation

Woods also asserts that his counsel was ineffective in failing successfully to argue that he was arrested without probable cause and that the evidence recovered incident to his arrest was therefore "fruit of the poisonous tree" seized in violation of the Fourth Amendment.  Woods contends that if his counsel had performed an adequate pre-trial investigation, he would have learned that a preliminary determination had already been made that there was no probable cause to arrest Woods on the charge of simple burglary, which his counsel should have used to move to suppress the evidence recovered incident to his arrest.[30]

The state court record reflects that on June 24, 2007, a preliminary determination was made that there was no probable cause to detain Woods based upon a sheriff deputy's affidavit attesting to the basis of Woods's arrest on the charge of simple burglary of an inhabited dwelling in violation of La. Rev. Stat. § 14:62.2.[31]  Louisiana law provides for a preliminary determination of probable cause by a magistrate in cases where a person is being detained pursuant to a warrantless arrest for purposes of determining whether the accused should be released on personal recognizance or bond or held in custody.  La. Code Crim. P. art. 230.2 in pertinent part provides:

---

[30]Rec. Doc. No. 3, pp. 21-24.

[31]St. Rec. Vol. 1 of 4, tab 1; St. Rec. Vol. 2 of 4, pp. 8-9.

> A. A law enforcement officer effecting the arrest of a person <u>without a warrant</u> shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit it to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. . . .
>
> B. If a probable cause determination is not timely made . . . , the arrested person shall be released on his own recognizance.

However, such a preliminary determination does <u>not</u> subsequently bar the same or similar charges based on a bill of information or indictment. La. Code Crim. P. art. 386.

In addition, it is well-established that police are entitled to stop a person absent probable cause if there is reasonable suspicion that the detained person has committed or is about to commit a criminal offense. <u>Staten v. Tatom</u>, 465 Fed. Appx. 353, 358-59 (5th Cir. 2012) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 24 (1968)). If an arrest ensues, a warrantless search incident to the arrest is justified to protect an officer's safety. <u>Chimel v. California</u>, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."); <u>Arizona v. Gant</u>, 556 U.S. 332, 361 (2009) (there are two justifications for a warrantless search incident to arrest - officer safety and the preservation of evidence).

At an April 16, 2008 suppression hearing conducted after Woods was charged by bill of information, Deputy Abraham Andino testified that he had been notified that a

burglary suspect had left the scene in a white Ford Explorer.[32]   Based upon this information, he stopped a white Ford Explorer, which he spotted in the vicinity where the burglary had occurred. Andino testified that upon stopping the vehicle, Woods, a passenger in the vehicle, immediately put up a struggle and "started digging in his pockets."  Unsure as to whether Woods was digging for a weapon, the deputy conducted a search and found pills in Woods's pocket and nearby on the ground.[33]

Under these circumstances, I find that neither the stop of the vehicle, nor the arrest, nor the search incident to the arrest were unconstitutional.  The fact that there was a preliminary determination for detention purposes only following Woods's warrantless arrest, that probable cause did not exist for Woods's warrantless arrest on the charge of simple burglary, did not render the stop, arrest and search unlawful.  Woods was later charged by bill of information. "Discharge of a defendant after a preliminary examination does not preclude the subsequent filing of an indictment, information, or affidavit against him for the same offense."  La. Code Crim. P. art. 386.  It would have been futile for counsel to rely on the preliminary determination as a basis to suppress the drug evidence, when Woods was properly charged thereafter via bill of information.  Counsel cannot be ineffective for failing to pursue a futile course of action.  United States v. Manley, 2011 WL 2259761, *3 (E.D. Pa.2011); see Lindsey v. Cain, 267 Fed. Appx. 374, *1 (5th Cir.

---

[32]St. Rec. Vol. 2 of 4, p. 73.

[33]Id. at p. 75.

2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002)).  I find that the state courts' rejection of the instant claim does not represent an unreasonable application of Supreme Court law to the facts of this case.

C.    Motion to Sever

Woods complains that counsel was ineffective because he failed to file a second motion to sever the drug charges from the simple burglary charge.  Woods asserts that the trial judge's decision denying his motion to sever was based upon the district attorney's false statement that Woods threw out the drugs while he was fleeing in a vehicle from the burglary scene, before the police stop.  In later testimony, it was established that Woods threw out the drugs after the stop.[34]  According to Woods, if the trial judge had known that the drugs were not discovered in his possession until after the stop, the judge would have granted his motion to sever and found that the two acts, the simple burglary and the drug possessions, were separate and therefore should be tried separately.

"The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate."  Tribbitt v. Wainwright, 540 F.2d 840, 841

---

[34]St. Rec. Vol. 2 of 4, pp. 74-75.

(5th Cir. 1976), cert. denied, 430 U.S. 910 (1977).  See also  Wharton–El v. Nix, 38 F.3d 372, 374 (8th Cir. 1994) (to obtain habeas relief for failure to sever, a petitioner must show that the failure of the trial court to grant severance rendered the trial "fundamentally unfair"), cert. denied, 513 U.S. 1162 (1995).

Woods's claim that the district attorney provided a false version of events is based upon the following statement:  "[D]uring the course of [the police] stop, [Woods] fled, during the course of fleeing, in a vehicle, he threw out narcotics."[35]  The prosecutor proceeded to explain:

> To [exclude such testimony] would force almost a subordinate [sic] of perjury that the officers would not be able to testify that this man during fleeing, was throwing drugs out.  They would have to leave that out, during the testimony.  They would have to change what happened in order to fit into the way the Defendant wants to be tried.[36]

In denying Woods's motion to sever, the trial judge reasoned:

> Well, considering his [the prosecutor's] argument that they [the sheriff deputies] would have to change their testimony because if the facts are the same and they were being thrown out of a car as he was fleeing or prior to a stop, the police officer[s] would have to change their testimony about his stop and his arrest.
> So I am going to allow it to be joined.[37]

---

[35]St. Rec. Vol. 2 of 4, p. 67 (emphasis added).

[36]Id. at pp. 67-68.

[37]St. Rec. Vol. 2 of 4, p. 68.

"[A] defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." United States v. Little Dog, 398 F.3d 1032, 1037 (8th Cir. 2005) (internal quotation marks omitted). See also Tribbitt, 540 F.2d at 841 (joinder of charges warranted where evidence of each offense would have been admissible at separate trial of the other offense in order to "give the finder of fact the complete picture of what transpired") (emphasis added).

Evidence of the facts surrounding Woods's arrest were probative and admissible at a separate trial of the simple burglary crime. Testimony would have to have been offered to show how Woods came to be arrested, that he attempted to flee upon being stopped by police and commenced emptying his pockets to rid himself of drugs. Without such testimony, jurors would not have had a "complete picture of what transpired," specifically, what led to Woods's arrest. Thus, the joinder of the offenses did not render Woods's trial "fundamentally unfair." Woods was not prejudiced by counsel's failure to reurge his motion to sever, which he had already unsuccessfully reurged once before. I find the instant claim wholly without merit. Woods is not entitled to federal habeas relief on this claim.

VI.    PROBABLE CAUSE

Woods contends that he was denied due process "when a criminal prosecution was initiated against him with a finding of no probable cause."[38]  Woods asserts that the preliminary determination discussed above that probable cause did not exist to support the simple burglary charge prohibited the State from pursuing that charge.  He argues that the subsequent bill of information containing the simple burglary charge and his subsequent prosecution on that charge violated his right to due process.

A preliminary determination of whether probable cause exists to support a warrantless arrest is merely a "gateway step."   United States v. Amos, 2012 WL 3608600, *8 (6th Cir. 2012).  It is a mechanism by which a determination is made as to "whether probable cause exists for detaining a suspect before a potential indictment or [bill of] information." Id. (emphasis original) (quotation omitted).  Under Louisiana law, the preliminary determination of no probable cause was a similar procedural "gateway step" that in no way precluded later prosecution.

As discussed above, on June 24, 2007, a preliminary determination was made that there was no probable cause to detain Woods based upon a sheriff's deputy's affidavit that Woods had committed a simple burglary of an inhabited dwelling in violation of La.

---

[38]Rec. Doc. No. 3, p. 30.

Rev. Stat. § 14:62.2.[39]  As noted above, this preliminary determination did <u>not</u> preclude Woods's subsequent charge on the same or similar offenses by way of bill of information.  La. Code Crim. P. art. 386.  Less than a month later, on July 11, 2007, a bill of information was filed charging Woods with simple burglary, along with two counts of drug possession.[40] Woods was subsequently prosecuted on these charges.[41]

In the factually similar case of <u>Moore v. Chrones</u>, 687 F. Supp. 2d 1005, 1037-38 (C.D. Cal. 2010), the petitioner, Larry Moore, was arrested on charges of second degree robbery, petty theft with a prior theft conviction, and possession of heroin for sale.  At a preliminary hearing conducted 48 hours after his arrest, it was determined that no probable cause existed to support Moore's warrantless arrest on the petty theft and possession of heroin charges.  In seeking federal habeas relief, Moore contended that as a result of the initial determination that probable cause did not exist to support two of the charges, the state was "forever barred" from pursuing the charges.  <u>Id</u>.  Thus, he argued that the prosecutor's subsequent bill of information containing the charges and his subsequent prosecution on the charges violated his right to due process.  <u>Id</u>. at 1038.  The district court, however, rejected Moore's claim.  The court recited California state procedural provisions similar to those discussed above in Louisiana concerning the

---

[39]St. Rec. Vol. 1 of 4, tab 1; St. Rec. Vol. 2 of 4, pp. 8-9.

[40]<u>See</u> <u>supra</u> at pp. 1-2.

[41]<u>See</u> <u>supra</u> at pp. 4-5.

"limited nature" of the preliminary determination and the fact that it did <u>not</u> preclude the prosecution from charging the same offense later.  <u>Id.</u> at 1038-39.  "More critically, Petitioner has not shown any federal constitutional error arising from these events."  <u>Id</u>. at 1039.  Thus, the <u>Moore</u> court denied federal habeas corpus relief on this ground.

Woods similarly fails to set forth any case law or federal statute supporting his claim that he was denied due process by virtue of a bill of information filed against him containing this simple burglary charge and his subsequent prosecution on the charge. The preliminary determination of "no probable cause" was for pretrial detention or release purposes only.  It did <u>not</u> preclude a subsequent bill of information charging the same offense.  At trial, the jury ultimately returned convictions based on ample evidence sufficient to support a finding of guilt beyond a reasonable doubt as to the offenses for which he was convicted.  Under these circumstances, Woods's prosecution after a <u>preliminary</u> determination of no probable cause cannot be deemed to have been so fundamentally unfair that a constitutional violation could be found.  Thus, I find that the state courts' rejection of the instant claim does not constitute an unreasonable application of federal constitutional precedent to the facts of this case.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Michael B. Woods for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[42]

New Orleans, Louisiana, this _____28th_____ day of March, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[42]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.